IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY BENNETT,<br><br>      Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>      Defendant. | Civil Action No. 11-1077<br>Judge Joy Flowers Conti<br>Magistrate Judge Lisa Pupo Lenihan<br>ECF Nos. 11, 13 |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

Plaintiff Harry Bennett ("Bennett") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. For the reasons that follow, it is respectfully recommended that the Commissioner's decision be vacated, and that the case be remanded to him for further consideration of Bennett's applications.

**II.    Procedural History**

Bennett protectively applied for DIB and SSI benefits on May 24, 2007, alleging that he had become disabled on April 15, 2006. R. at 15, 84, 89. The applications were administratively denied on September 14, 2007. R. at 15, 62. Bennett responded on October 19, 2007, by filing a timely request for an administrative hearing. R. at 67. A hearing was scheduled for April 9, 2009. R. at 56. Bennett did not appear for the hearing. In an order dated April 21, 2009,

Administrative Law Judge William E. Kenworthy dismissed Bennett's request for a hearing and reinstated the earlier decision denying his applications. R. at 51-55.

After receiving notice of Judge Kenworthy's order, Bennett filed a request for review with the Appeals Council and alleged that he had been hospitalized at the time of the scheduled hearing. R. at 50. On June 24, 2009, the Appeals Council directed Bennett to supply documentary evidence of his hospitalization. R. at 48-49. Bennett provided the Appeals Council with evidence establishing that he had been hospitalized from March 18, 2009, through April 2, 2009. R. at 703-1074. Although Bennett's hospitalization had ended prior to the scheduled hearing, the Appeals Council determined that his period of inpatient treatment and need for follow-up care had constituted a "good reason" for his failure to appear. R. at 46. In an order dated August 18, 2009, the Appeals Council vacated Judge Kenworthy's decision and remanded Bennett's case for further consideration. R. at 46-47.

On March 22, 2010, a hearing was held in Morgantown, West Virginia, before Administrative Law Judge ("ALJ") Richard D. Brady. R. at 1082. Bennett, who was represented by counsel, appeared and testified at the hearing. R. at 1085-1104. Larry Bell ("Bell"), an impartial vocational expert, also testified at the hearing. R. at 1104-1112. In a decision dated April 5, 2010, the ALJ determined that Bennett was not "disabled" within the meaning of the Act. R. at 12-28. Bennett filed a request for review on June 4, 2010, seeking administrative review of the ALJ's decision. R. at 7. The Appeals Council denied the request for review on June 24, 2011, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 4.

Bennett commenced this action on August 19, 2011, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 4. Bennett and the Commissioner filed motions for

summary judgment on December 5, 2011, and January 4, 2012, respectively. ECF Nos. 11 & 13. The matter has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B)-(C). The motions for summary judgment filed by the parties are the subject of this report and recommendation.

### III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any

3

'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of

4

> impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

Section 105 of the Contract With America Advancement Act of 1996 ("CWAAA") amended the Social Security Act to provide that "an individual shall not be considered to be disabled" thereunder if "alcoholism or drug addiction" would be "a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Commissioner has promulgated regulations to implement the statutory mandate of the CWAAA. 20 C.F.R. §§ 404.1535, 416.935. Under the applicable regulations, the critical question is whether a claimant who is disabled as a result of drug or alcohol use would remain disabled if he or she were to stop using those substances. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If his or her disability would persist even after a cessation of drug or alcohol abuse, he or she is entitled to an award of benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). Conversely, if a claimant's disability would not remain in the absence of continuing drug or alcohol abuse, a finding of "materiality" is warranted, thereby requiring a denial of benefits. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.  **The ALJ's Decision**

In his decision, the ALJ determined that Bennett had not engaged in substantial gainful activity subsequent to his alleged onset date. R. at 17. Bennett was found to be suffering from degenerative disc disease of the cervical and lumbar spine, status post disectomies and cervical fusion, depressive disorder secondary to alcohol abuse, a history of alcohol dependence, chronic obstructive pulmonary disease ("COPD"), and syncope. R. at 18. Although his COPD and syncope were deemed to be "non-severe," his remaining impairments were deemed to be "severe" within the meaning of the Commissioner's regulations. R. at 18; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that

Bennett's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 18-23.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Bennett's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work; must be allowed to change position between sitting and standing very briefly after 20 to 30 minutes; can perform all postural movements occasionally, except cannot crawl or climb ladders, ropes, or scaffolds; should have no concentrated exposure to excessive cold, dampness, or vibration; must have customary breaks every two hours; and is limited to the performance of unskilled, simple (one- to three-step) tasks involving simple social interaction.

R. at 23. Bennett had "past relevant work"[2] experience as a laminator, a trailer park manager, an autobody repairman, a general labor and forklift operator, a telemarketer, a machine operator, and a custodian. R. at 1107-1109. Bell classified the custodian position as an "unskilled"[3] job at the "light"[4] level of exertion. R. at 1109. He further testified that an individual with the limitations reflected in the ALJ's residual functional capacity assessment could work as a

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

custodian. R. at 1109. Relying on Bell's testimony, the ALJ determined that Bennett could return to his past relevant work. R. at 26-27.

Bennett was born on August 25, 1960, making him forty-five years old on his alleged onset date and forty-nine years old on the date of the ALJ's decision. R. at 1086. He was classified as a "younger person" under the Commissioner's regulations.[5] 20 C.F.R. §§ 404.1563(c), 416.963(c). He had the equivalent of a high school education and an ability to communicate in English.[6] R. at 93, 99, 1086; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ made the alternative finding that Bennett could work as a garment marker/sorter, a laundry folder, an assembler, or a machine tender. R. at 27-28. Bell's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[7] R. at 1110.

**V.     Discussion**

Bennett injured his back while attempting to replace rubber on a flat roof. R. at 1094. In January 2006, he underwent back surgery at Wesley Long Hospital in Greensboro, North Carolina. R. at 214. Although he got some relief from the surgery, he later developed numbness and tingling in his thighs and lower extremities. R. at 214. Dr. John E. Brick, a neurologist affiliated with West Virginia University ("WVU"), ordered a magnetic resonance imaging ("MRI") scan of Bennett's back during the fall of 2007. R. at 430. The MRI scan, which was

---

[5] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).
[6] The record indicates that Bennett received his General Educational Development ("GED") certification in 1981. R. at 99, 1086.
[7] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

conducted on October 8, 2007, revealed that Bennett had "some degree of cervical stenosis and some early changes in his spinal cord." R. at 430, 698-702.

On November 28, 2007, Dr. Alexander Kandabarow performed surgery on Bennett's neck. R. at 331-332. The operation was performed at Uniontown Hospital in Uniontown, Pennsylvania. R. at 331-332. Bennett testified that the operation had not alleviated his neck pain. R. at 1095.

In addition to his physical impairments, Bennett suffers from mental infirmities. He was evaluated by Dr. Alison Sastry, a psychiatrist, on June 12, 2007. R. at 290-293. The evaluation was conducted at Chestnut Ridge Counseling Services, Inc. ("Chestnut Ridge"), in Uniontown. R. at 290-293. Although Bennett admitted to entertaining "passive suicidal thoughts," he denied that he had formulated a plan to take his own life. R. at 290. Dr. Sastry noted that Bennett "[did] not appear to present any imminent danger to himself or others." R. at 293.

On June 26, 2007, Bennett had an argument with his wife. R. at 236. He quickly became depressed and attempted suicide by overdosing on Zoloft. R. at 236. The overdose caused him to have a seizure. R. at 236. As a result of the suicide attempt and ensuing medical problems, Bennett was admitted to Monongahela Valley Hospital ("Monongahela") for emergency treatment.[8] R. at 236-241. It was determined that he was suffering from major depression with suicidal ideation. R. at 240. Bennett was discharged from inpatient treatment on June 30, 2007. R. at 236.

Dr. William Ryan, a physician affiliated with Chestnut Ridge, evaluated Bennett on July 18, 2007. R. at 402. Dr. Ryan reported that Bennett's symptoms were "quite consistent with a substance abuse pattern." R. at 402. It was determined that Bennett's treatment regimen should

---

[8] The record indicates that Bennett was admitted on a "voluntary" basis pursuant to 50 PA. STAT. § 7201. R. at 236-237.

9

be formulated on the assumption that he had a "fundamental substance abuse problem" rather than a "clear-cut bipolar disorder." R. at 402.

Bennett returned to Monongahela on August 18, 2007, complaining of "[a]uditory hallucinations and thoughts of suicide." R. at 259. He was again admitted for inpatient treatment. R. at 259-265. His condition improved after the administration of medications. R. at 259. On August 27, 2007, Bennett was discharged from inpatient care and instructed to seek follow-up treatment at Chestnut Ridge. R. at 260.

Bennett went to the emergency room at Ruby Memorial Hospital ("Ruby"), a hospital affiliated with WVU, on March 18, 2009. R. at 423. He complained of abdominal pain, nausea, vomiting and diarrhea. R. at 423. Objective testing confirmed that Bennett was suffering from acute pancreatitis. R. at 423. He remained hospitalized at Ruby until April 2, 2009. R. at 423. At the time of his discharge, Bennett was told not to consume fatty foods and alcoholic beverages. R. at 423. He was instructed to seek follow-up treatment with his primary care physician. R. at 423. In a treatment note describing Bennett's discharge instructions, Dr. Kavara Vaughn reported that Bennett had been informed that the consumption of fatty foods and alcoholic beverages could cause him to suffer "another episode of acute pancreatitis." R. at 423.

The record contains several medical opinions concerning Bennett's ability (or inability) to engage in work-related activities. Dr. V. Rama Kumar, a non-examining medical consultant, opined on August 7, 2007, that Bennett was physically capable of performing a range of "light" work activities involving only occasional postural maneuvers. R. at 296-302. Dr. Walter Bobak, Bennett's primary care physician, repeatedly indicated that Bennett's impairments were disabling. R. at 208-213, 222-223. On December 22, 2009, Dr. Bobak detailed Bennett's alleged physical limitations in response to a medical questionnaire. R. at 443-446. Dr. Bobak

reported that Bennett could sit for only one hour, and stand or walk for less than one hour, during the course of an eight-hour workday. R. at 443. Dr. Bobak further stated that Bennett could never bend, crawl, climb, crouch, kneel, or lift objects weighing more than five pounds.[9] R. at 444. In addition, Dr. Bobak opined that Bennett needed "[c]omplete freedom to rest frequently throughout the day," and that he was frequently required to "lie down" or "sit on a recliner" for substantial periods of time. R. at 445. The views expressed by Dr. Bobak were consistent with a belief that Bennett was incapable of performing the duties of a "sedentary"[10] job.

Dr. Lanny Detore performed a consultative psychological evaluation of Bennett on August 10, 2007. R. at 303. Based on his examination findings, Dr. Detore reported that Bennett had moderate-to-marked limitations in his abilities to respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting. R. at 308. Dr. Detore further remarked that Bennett's "level of functioning" was likely "to interfere with his ability to carry out work-related duties until he [was] more stabilized with his depression." R. at 307. Dr. Jan Melcher, a non-examining psychological consultant, opined on September 13, 2007, that Bennett was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." R. at 326.

Dr. Detore performed a second consultative psychological evaluation of Bennett on February 12, 2010. R. at 1075. In a subsequent report detailing his examination findings, Dr. Detore observed that Bennett had "longstanding problems with alcohol abuse and dependence." R. at 1076. Dr. Detore reported that Bennett's prognosis was "poor for much improvement in his

---

[9] In a letter to Dr. Bobak dated September 5, 2007, Dr. Brick stated that Bennett had complained of numbness in his legs whenever he was forced to carry objects weighing more than five pounds. R. at 431.
[10] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

11

condition," since he was "generally feeling depressed most of the time and obviously self-medicating with alcohol." R. at 1077. According to Dr. Detore, Bennett's "[a]bility to concentrate and persist at managing a work-related task" was "poor" because of "his active drinking and level of depression." R. at 1078.

At the hearing, Bennett testified that he experienced constant pain in his back. R. at 1096. He stated that he had quit taking his prescribed pain medications because they had not been effective. R. at 1096. He expressed a preference for over-the-counter pain relievers. R. at 1096. When questioned about his functional abilities, Bennett asserted that he could only sit, stand or walk for fifteen to twenty minutes at a time. R. at 1097. He testified that he could *lift*, but not *carry*, a gallon of milk. R. at 1098. He described difficulties that he usually encountered while trying to get dressed or tie his shoes. R. at 1102. When asked about his mental impairments, Bennett remarked that he cried frequently, and that he sometimes wanted to "end it." R. at 1099. He further testified that he generally avoided crowds for fear that he would suffer panic attacks. R. at 1099-1100.

The ALJ found Dr. Bobak's opinion to be "rather extreme" and Dr. Detore's opinion to be too "restrictive." R. at 26. The consultative opinions of Dr. Kumar and Dr. Melcher were credited over those of Dr. Bobak and Dr. Detore. R. at 26. Factoring the limitations attributable to Bennett's continued alcohol use into the assessment, the ALJ determined that Bennett could perform a limited range of light, unskilled work involving simple, one- to three-step tasks and only simple social interaction. R. at 23. The ALJ stated that if Bennett were to refrain from consuming alcoholic beverages, his remaining mental impairments would preclude only the performance of "complex work tasks" and "complex social interaction." R. at 25.

12

Bennett challenges the ALJ's findings pertaining to both physical and mental limitations. ECF No. 12 at 14-18. He contends that the ALJ improperly rejected Dr. Bobak's opinion without relying on countervailing medical evidence. ECF No. 12 at 14-16. He also argues that the ALJ drew erroneous inferences from Dr. Detore's examination reports concerning the extent to which his mental impairments (and resulting functional limitations) were attributable to alcohol abuse. *Id.* at 16-18. In addition, Bennett insists that his subjective complaints of disabling pain were wrongfully discounted by the ALJ. *Id.* at 18-19.

The United States Court of Appeals for the Third Circuit generally looks with disfavor on administrative decisions which credit the opinions of non-examining medical consultants over those expressed by treating sources.[11] *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). In this case, the ALJ clearly rejected Dr. Bobak's opinion of disability and credited Dr. Kumar's contrary assessment. R. at 26. Under the Commissioner's regulations, an assessment provided by an examining source is ordinarily entitled to more weight than an assessment supplied by a consultant who has never examined or evaluated the claimant. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *McPherson v. Astrue*, 605 F.Supp.2d 744, 772 (S.D.W.Va. 2008). It is worth noting that Dr. Detore evaluated Bennett twice. R. at 303-309, 1075-1080. On both occasions, Dr. Detore opined that Bennett's mental limitations would significantly inhibit his ability to perform work-related tasks.[12] R. at 307, 1078. More than thirty months elapsed between the two evaluations. R. at 303, 1075. Despite the passage of two

---

[11] An opinion expressed by a non-examining medical consultant can constitute probative evidence of a claimant's ability to work. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). No medical opinion can be regarded as "incompetent evidence." *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992). The relevant inquiry centers on the *weight* that should be given to the opinions put forth by treating, examining and non-examining sources. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008)(observing that "a longtime treating physician's opinion carries greater weight than that of a non-examining consultant").

[12] Unlike a treating healthcare provider, who may be inclined to take the position that is most advantageous to his or her patient, a consultative examiner frequently brings a unique combination of "impartiality and expertise" to the adjudicatory process. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985).

13

and a half years, Dr. Detore's second evaluation of Bennett yielded findings that were very similar to those obtained during the first evaluation. R. at 303-309, 1075-1080. The ALJ nevertheless credited Dr. Melcher's consultative opinion over the findings reported by Dr. Detore. R. at 26.

Under the present circumstances, the Commissioner's decision cannot stand. The ALJ improperly rejected the opinions of a treating physician and a two-time consultative examiner solely on the basis of contrary assessments provided by non-examining consultants. *Brownawell*, 554 F.3d at 357. Dr. Bobak clearly opined that Bennett was incapable of engaging in sedentary work activities. R. at 443-446. The five-pound lifting limitation identified by Dr. Bobak was generally consistent with Bennett's testimony. R. at 444, 1098. In a letter to Dr. Bobak dated September 5, 2007, Dr. Brick stated that Bennett had complained of numbness in his legs whenever he had to carry five-pound objects. R. at 431. Although Dr. Brick attributed the complaints to Bennett, an individual's statements to his or her treating physician should not be regarded as inherently unreliable. *Ryan v. Commissioner of Social Security*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Every medical examination of a conscious patient "necessarily involves a subjective element." *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1988). Because a patient has an obvious interest in being treated appropriately, his or her statements to a treating physician are ordinarily considered to be reliable evidence of his or her actual condition. FED. R. EVID. 803(4); *White v. Illinois*, 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992); *United States v. Chaco*, 801 F.Supp.2d 1200, 1204 (D.N.M. 2011); *Samaan v. St. Joseph Hospital*, 764 F.Supp.2d 238, 239-240 (D.Me. 2011); *Government of the Virgin Islands v. Morris*, 191 F.R.D. 82, 85 (D.V.I. 1999). Although more than thirty months elapsed between Dr. Detore's consultative evaluations, the evaluations generally yielded the same findings. R. at

303-309, 1075-1080. Dr. Detore believed that Bennett's depression would significantly interfere with his ability to perform work-related tasks. R. at 307, 1098. In light of the evidence of disability put forth by Bennett's treating and examining sources, the consultative assessments provided by Dr. Kumar and Dr. Melcher cannot be fairly characterized as "substantial evidence" of Bennett's ability to maintain a full-time job. *Brownawell*, 554 F.3d at 357.

The Court of Appeals' recent decision in *Chandler v. Commissioner of Social Security*, 667 F.3d 356 (3d Cir. 2011), is not to the contrary. In *Chandler*, the Court of Appeals determined that the opinion of a non-examining medical consultant could outweigh the opinion of a treating nurse practitioner. *Chandler*, 667 F.3d at 361-362. Unlike a licensed physician or psychologist, a nurse practitioner is not considered to be an "acceptable medical source" under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(a)(1)-(5), (d)(1), 416.913(a)(1)-(5), (d)(1). *Chandler* does not undermine the earlier decisions admonishing that assessments provided by treating sources should not be rejected solely on the basis of conflicting assessments supplied by non-examining consultants. *Brownawell*, 554 F.3d at 357; *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986).

The Commissioner must give "serious consideration" to a claimant's subjective complaints of disabling pain whenever the record contains objective evidence of an impairment that could reasonably be expected to cause such pain. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). At the hearing, Bennett complained of constant pain in his back. R. at 1096-1097. The ALJ dismissed Bennett's testimony by pointing out that he was not taking prescribed pain medications. R. at 25. As noted earlier, Bennett testified that he was using over-the-counter pain relievers rather than medications that could only be obtained with prescriptions. R. at 1096.

15

Bennett argues that the ALJ wrongfully discounted his subjective complaints of pain. ECF No. 12 at 18-19. Although the ALJ was required to give careful consideration to such complaints, he was not required to credit them in every respect. *Chandler*, 667 F.3d at 363. The ALJ concluded that Bennett needed to "change positions" every twenty to thirty minutes. R. at 23. This accommodation appears to have been based on Bennett's testimony concerning his inability to sit, stand or walk for long periods of time. R. at 1097. It cannot be said that Bennett's subjective complaints were ignored. Nonetheless, Bennett's other subjective complaints were corroborated by competent medical evidence. Consequently, the ALJ's attentive consideration of Bennett's testimony cannot justify an affirmance under the present circumstances.

A claimant's need for frequent inpatient treatment has some bearing on his or her ability to maintain a full-time job. *Kangas*, 823 F.2d at 777-778. In order for a claimant to be "disabled" within the meaning of the Act, both his or her medically determinable impairment (or combination of impairments) and his or her inability to work must last (or be expected to last) for the statutory twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). The record indicates that Bennett was hospitalized at least four times during the relevant period of time.[13] R. at 172-207, 235-280, 349-394, 1703-1704. In determining that Bennett had not been "disabled" for any continuous twelve-month period, the ALJ appears to have placed some reliance on the fact that Bennett's hospitalizations had been "related primarily to alcohol consumption." R. at 23. It is not clear whether the ALJ improperly considered the "materiality" of Bennett's alcohol consumption for the purpose of determining whether he was capable of working. *Bustamonte v. Massanari*, 262 F.3d 949, 954-955 (9th Cir.

---

[13] The report of Dr. Sastry's evaluation of June 12, 2007, stated that Bennett had received inpatient psychiatric treatment in North Carolina at some point in 2006. R. at 290. It is not clear whether this hospitalization occurred subsequent to Bennett's alleged onset date of April 15, 2006.

2001)(treating a finding of disability as a condition precedent to an inquiry as to whether drug or alcohol abuse was material to such a finding). The ALJ clarified that the accommodation permitting only the performance of "simple" tasks involving "simple" social interaction (rather than the performance of "complex" tasks involving "complex" social interaction) accounted for limitations that were attributable to Bennett's alcohol consumption. R. at 25. In other respects, however, the ALJ appears to have factored Bennett's alcohol use into the initial finding of non-disability. For instance, the ALJ apparently factored the effects of alcohol into his evaluation of Dr. Detore's first examination report. R. at 25-26. To the extent that the ALJ did so, his residual functional capacity assessment cannot be sustained. *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003)("The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. Substance use disorders are simply not among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability.").

For the foregoing reasons, the Commissioner's decision denying Bennett's applications for DIB and SSI benefits cannot be affirmed. The only remaining question is whether an immediate award of benefits is justified, or whether the proper remedy is a remand for further consideration of Bennett's applications. A judicially-ordered award of benefits is appropriate only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). That standard has not been satisfied in this case.

Although the report of a non-examining consultant could not alone provide a basis for the rejection of Dr. Bobak's assessment, the ALJ was not bound by that assessment. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). Given the "rather extreme" nature of the limitations identified by Dr. Bobak, the ALJ would have been justified in asking Bennett to undergo a consultative physical examination. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)(recognizing that while a "treating physician may too quickly find disability," a consultative examiner "may bring both impartiality and expertise" to the adjudicatory process). Furthermore, the record contains evidence which suggests that Bennett's mental impairments were exacerbated by his continuing consumption of alcohol. Bennett needed to be hospitalized shortly after refusing to undergo treatment for his alcoholism. R. at 291, 236-241. When he returned to Chestnut Ridge for follow-up treatment, Bennett was found to be suffering from a "fundamental substance abuse problem" rather than a "clear-cut bipolar disorder." R. at 402. On February 20, 2010, Dr. Detore stated that Bennett had a "poor" ability to perform work-related tasks because of "his *active drinking* and level of depression." R. at 1078 (emphasis added). Even if it is assumed that Bennett's impairments rendered him incapable of working between April 15, 2006, and April 5, 2010, the existing record does not support an award of benefits without a specific finding of non-materiality under the CWAAA. 20 C.F.R. §§ 404.1535, 416.935. For these reasons, the proper remedy is a remand for further proceedings rather than an immediate award of benefits. *Stephens v. Commissioner of Social Security*, 484 F.Supp.2d 662, 668-669 (E.D.Mich. 2007).

**VI.    Conclusion**

Accordingly, it is respectfully recommended that the Commissioner's motion for summary judgment (*ECF No. 13*) be denied, and that Bennett's motion for summary judgment

(*ECF No. 11*) be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further consideration of Bennett's claims. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

Dated: April 27, 2012

_____
    LISA PUPO LENIHAN
    United States Magistrate Judge


cc:    All counsel of record